## Case No. 1,719.

### BOWDITCH v. BOSTON.

[4 Cliff. 323.][1]

Circuit Court, D. Massachusetts. May Term, 1876.[2]

TRIAL—PROVINCE OF JUDGE—SUBMISSION TO JURY—MUNICIPAL CORPORATIONS—FIRE DEPARTMENT—LIABILITY FOR TORTS OF OFFICERS—AUTHORIZATION OF TORT—RATIFICATION—LIABILITY FOR DESTRUCTION OF BUILDINGS.

1. In the United States circuit courts, judges are not now bound to submit a case to the jury, merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant a jury in finding a verdict in favor of that party.

[See note at end of case.]

2. A preliminary question is left for the judge, not whether there is literally no evidence to support the issue; but whether there is any upon which a jury can properly proceed to find a verdict for the party introducing it, upon whom the burden of proof is imposed.

[See note at end of case.]

3. Prima facie, a municipal corporation is not liable for the trespass or wrongful acts of its officers; but it may become liable, under special circumstances; as where the act, if not wholly ultra vires, was expressly authorized by the governing body of the corporation, or where it was done by the officers of a corporation within the scope of their duties, and subsequently ratified by the corporation.

4. The liability of a city corporation for buildings destroyed or pulled down to stay the progress of a fire is purely statutory, and never existed at common law.

5. Where property is injured or destroyed by firewards, to prevent the progress of a fire, the liability of the city for such destroyed property being a statutory one, the plaintiff's case must be brought strictly within the statute creating the liability, or the corporation is not responsible.

[See note at end of case.]

6. Property destroyed by officers of a city to stay the progress of a conflagration is not private property taken for public use, under the constitution of Massachusetts.

[Error to the district court of the United States for the district of Massachusetts.

[Action by Alexander G. Bowditch, as-

signee in bankruptcy of Armstrong & Co., against the city of Boston, for damages sustained by the destruction of buildings to check spread of a fire. From a judgment for defendant (Case No. 1,718), plaintiff appeals. Affirmed.]

In this state, firewards, or any three of them, present at any place in immediate danger from a fire, and where no firewards are appointed, the selectmen or mayor and aldermen present, or in their absence, two or more of the civil officers present, or in their absence, two or more of the chief military officers of the place present, may direct any house or building to be pulled down or demolished, when they judge the same to be necessary in order to prevent the spreading of the fire. Gen. St. Mass. p. 177, c. 24, § 4. Whenever it is adjudged at any fire by any three or more of the engineers present, of whom the chief engineer, if present, shall be one, to be necessary, in order to prevent the further spreading of the fire, to pull down, or otherwise demolish any building, the same may be done by their joint order. City Ords. p. 237, § 11. Damages were claimed by the plaintiff as assignee in bankruptcy of the estate of Armstrong & Co., for the destruction of the stock of merchandise, fixtures, machinery, and tools of the bankrupt, situated in a certain described building in said city, by the authorities of the city during the time of what is known as the great fire of November, 1872. Compensation for the alleged injury having been refused, the plaintiff, as such assignee, instituted this action of tort, to recover for the value of the property destroyed, the writ containing six counts. Four of the counts were founded upon the statute of the state, which provided that certain public officers may, under certain conditions, direct any house or building to be pulled down or demolished, when they judge the same to be necessary in order to prevent the spreading of the fire.

The first count alleged that the order to demolish the property was given by the mayor and aldermen. The second count alleged that the order was given by three firewards of the city. The third count, that it was given by two of the civil officers of the city. The fourth count, that it was given by two of the chief military officers of the place. Unlike those which preceded it, the fifth count claimed to recover upon the ground that the property was taken for public use without just compensation. Cities and towns are by the statute of the state made liable, in certain cases and under certain conditions, to persons whose property is injured or destroyed by persons engaged in a riot, and the sixth count of the writ was founded upon section 8 of that statute. Gen. St. p. 816, c. 164.

Service was made, and the corporation defendant appeared in the district court, where the suit was brought, and pleaded the gen-

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]
[2] [Affirming decree of the district court in Bowditch v. Boston, Case No. 1,718. Decree of the circuit court affirmed by supreme court in 101 U. S. 16.]

eral issue, denying every allegation of the several counts of the declaration. Subsequently the case came to trial, and the court, at the close of the plaintiff's case, instructed the jury that the evidence introduced by the plaintiff was not sufficient to warrant the jury in finding a verdict in his favor, and directed a verdict for the defendant, to which instruction the plaintiff excepted. Judgment was accordingly rendered for the defendant, and the plaintiff sued out a writ of error, and removed the cause into this court.

S. B. Allen and G. W. Morse, for plaintiff.

The plaintiff claims that there was evidence for the jury upon all the counts in his declaration, which embrace three grounds of action for the. same cause of action. First. Under Gen. St. Mass. c. 24, §§ 4–6. Second. Under the constitutional provision providing for the taking of private property for public purposes. See Const. Mass. pt. 1, art. 10; Const. U. S. art. 5, Amend. Third. Under Gen. St. Mass. c. 164, § 8.

It appears by Gen. St. Mass. c. 24, §§ 1–8, that the election of firewards seems to be left to the discretion of each city or town. The firewards seem intended to be a tribunal entirely distinct from the engineers, but having jurisdiction over them. A body of men of the very highest qualifications and best judgment is contemplated, as they can assume entire control at a fire. The highest power is conferred upon them by section 4, viz.: to pull down or demolish any house or building when they judge the same to be necessary to prevent the spread of fire. But the same section provides that where no firewards are appointed, certain other officers shall have the same power. By sections 26 and 41 the like power is conferred upon the engineers. There seems to be no provision in the statutes as to how many of the engineers shall act. It is left to the whole board, and there are thirteen besides the chief. See City Fire Ord. § 1.

If the legislature has left the power in the hands of the whole board, it is questionable whether the city government can pass a valid ordinance, placing the power in the hands of a small portion of the members, as has been attempted by section 11, City Fire Ord. But however that may be, the engineers are not firewards, although their powers, to a certain degree, are co-extensive. When we examine the whole of Gen. St. Mass. c. 24, together with its history, it is perfectly evident that the legislature meant just what its language imports in section 4; that "where no firewards are appointed, the mayor and aldermen present, or in their absence, two or more of the civil officers present," &c., shall have jurisdiction. Sections 4, 5, 24. 26, and 41, c. 24, were passed at different times. See Rev. St. c. 18, § 5; Acts 1839, c. 138, § 4; Acts 1844,

c. 152, § 9. The statutes conferring power upon the engineers were passed subsequently to that constituting the firewards, and the several acts were re-enacted and collected into this one chapter in 1860. If the legislature had intended to confer the power to demolish buildings upon the mayor and aldermen only, in the event of there being no firewards or engineers, such would have been the language; for the subject has three times been before the legislature, as will be seen. If such was the intention of the legislature, it would seem that the alternate provision was idle, as it appears plainly enough under the law that a city without firewards or engineers is an impossibility, and if it is not a city, there are no mayor and aldermen. And furthermore, if such had been the intent of the legislature, it would have expressly provided how many engineers should have jurisdiction. If any number less than the whole board can make such an order, why may not one of them do so? The word "three," qualifying the power of the firewards, does not refer to engineers. It will be observed that the presiding judge ruled, at the beginning of the trial, that, to render the city liable, the order to demolish must have been given by three engineers, to which ruling the plaintiff excepted. That ruling, of course, ended the trial upon the first, third, and fourth counts of the declaration, but all question of pleadings being waived, the plaintiff proceeded as if the second count were amended, alleging the order to have been given by three engineers, as well as upon the fifth and sixth counts. This ruling, at the outset of the trial, and the exception to it, saves every question raised by the first, third, and fourth counts. There is no doubt, however, from the evidence which strayed into the case (incompetent, of course, under the above ruling), that two civil officers gave the orders, and as policemen of the city are such officers, the order was carried out under the supervision of two civil officers. Fisher v. Boston, 104 Mass. 87; Buttrick v. Lowell, 1 Allen, 172.

But the plaintiff claims that there was sufficient evidence to go to the jury, that the order was given by three engineers, or by their authority, sufficient, under the circumstances, to render the city liable under the statute. It has been held that the three firewards must all be present at the particular building to be destroyed, and by unanimous consent condemn it to destruction; but a law which is so inflexible that it cannot be adapted to particular circumstances, is only an instrument of oppression. Where there is a small fire, so that three of the engineers can deliberate upon the expediency of demolishing a particular building, and leave others to see to the general safety, then a stricter construction of the statute is called for; but when a whole city is on fire, and nearly all the fire apparatus

of the principal cities of the commonwealth is on hand, requiring superintendence from the engineers, and human life is in danger at a hundred points, to be relieved only by their efforts, with the murderers and pilferers who hang about such scenes to subdue, and whole streets upon different sides of the fire require demolition to save the remainder of the city, it would be almost criminal for the engineers to divide up into triumvirates, and, as a judicial tribunal, grimly consider the evidence, and doom each particular building to destruction, with the scene of death and desolation going on about them. It would be impossible that such a course could be carried out; for, first, if the number of engineers had been multiplied tenfold, there would not have been enough to have done this and superintended at the different points of the fire; second, it would be impossible to keep a record of the buildings so passed upon at such a time; third, when the circle of the fire is so large, all prominent points requiring the constant presence of an engineer, three engineers could rarely be got together to decide what to demolish in every emergency, and it is only in case of the strictest emergency that they should demolish any building. The best that could reasonably be done was to designate a general or particular line of buildings to be destroyed, and put the execution of it into the best hands possible, which the officers passing the orders have power to do. See Gen. St. c. 24, § 6; City Fire Ord. § 6. The court will always bear in mind in this case, that this is only a question of whether there was any evidence to go to the jury. The sufficiency of the evidence is for the jury, and not for the court. The plaintiff is entitled to every reasonable inference to be derived from the testimony.

The plaintiff, having a leasehold interest in the premises, is the owner within the meaning of the statute, and may recover for such interest in the building, as well as for his personal property destroyed there. New York v. Lord, 17 Wend. 285; same case, with very exhaustive opinion, 18 Wend. 126; Ratcliffe v. Eden, 1 Cowp. 485; Hyde v. Cogan, 2 Doug. 699; Wilmot v. Horton, Id. 702, note. By reference to Rev. St. Mass. c. 18, § 7, the statute provided that "every owner of such house or building shall be entitled to recover reasonable compensation therefor," and so the statute stood until the commissioners who revised the statutes in 1860, changed the phraseology to its present form, viz.: "if the pulling down or demolishing such house or building, is the means of stopping the fire, . . . the owner shall be entitled to recover a reasonable compensation." This change of phraseology, and the dropping the word "therefor," and the words "such house or building" after the word "owner," certainly makes the statute much broader, and must have been intended to extend the remedy to all parties whose property should be destroyed, and especially to all owners of the house or building.

If the plaintiff's property was demolished by the order of the city government of Boston, to stay a great public calamity which was hanging over the city, there can be little doubt that it amounts to a taking of private property for public use within the meaning of the constitutional provision. Const. Mass. pt. 1, art. 10; Const. U. S. art. 5, Amend.; New York v. Lord, supra; American Print Works v. Lawrence, 1 Zab. [21 N. J. Law] 248; Id., 3 Zab. [23 N. J. Law] 605. By 7 & 8 Geo. IV. (A. D. 1827) c. 31, all the statutes in England relative to remedy against the hundred for injuries by parties riotously and tumultuously assembled were consolidated. This statute provides that if certain buildings, &c. (enumerating nearly all classes), shall be feloniously demolished, pulled down, or destroyed, wholly or in part, by any persons riotously and tumultuously assembled together, the inhabitants of the hundred, or any district in the nature of a hundred, wherever it is situate, shall be liable to yield full compensation to any person damnified by the offence, provided that the persons damnified, or such of them as had knowledge of the circumstance, shall go before some justice of the peace residing near and having jurisdiction over the offence committed, and shall state upon oath the names of the offenders, if known, and become bound to prosecute the offenders, when they become known. If they disperse voluntarily, it is for the jury to consider whether they did what they did with intent to demolish. Clarke v. Burdett, 2 Starkie, 504, is a case where a house was destroyed,—the house of plaintiff. The mob was returning from an election. The counsel representing the hundreds contended that the injuries contemplated by the statutes were such as were to be effected by a mob assembled for seditious purposes only. Lord Chief Justice Abbott said: "The statute extended to all cases where the injury was effected by a mob, whatever was its object. It was by no means uncommon, where the legislature had a particular object in view, in making a particular statute, to extend the particular enactments beyond the particular and immediate objects and apply it to other matter suggested by it. In the present case, the section which related to seditious practices was quite distinct from the clause which gives the present remedy." In Sampson v. Chambers, 4 Camp. 221, a mob aroused by the corn bill assembled around the plaintiff's house, supposing it to be the house of one who had supported the measure, and threw stones and brickbats against it for a considerable time. The mob cried out, "No corn bill;" and while the cry was going on, the cry that "The Piccadilly butchers are coming," was raised. The life guards rode up, and the mob dispersed. Lord Ellenborough held that there was a sufficient "beginning

to demolish" within the meaning of the statute, and plaintiff had a verdict. 1 Geo. I. St. 2, c. 5, provides that if twelve or more persons unlawfully, riotously, and tumultuously assemble, &c., the balance of the act being substantially the same as 7 & 8 Geo. IV. c. 31. The legislature, in passing this statute, having given no definition of the term "riot," within the meaning of the enactment, the common-law definition must prevail; and if there was such riotous demonstration as to terrify any subject, it is sufficient to sustain that part of the charge of riot. Reg. v. Phillips, 2 Moody, Cr. Cas. 252; Beatson v. Rushforth, 7 Taunt. 45. Where insurers paid the amount of the loss occasioned by the demolition of a house by rioters, they might maintain an action in the name of the assured against the hundred, under the statute. Mason v. Sainsbury, 3 Doug. 61. But they cannot in their own name. London Assurance Co. v. Sainsbury, Id. 245. Reed v. Inhabitants, etc., of Gainsbury, 4 Dowl. & R. 250, was under the statute of 9 Geo. I. c. 22, § 8. The only evidence was that some of the inhabitants saw two strange men, at two o'clock in the morning, standing near the property. Soon after, the property was in flames. The court ruled there was sufficient evidence from which the jury might infer that the property was wilfully set on fire. See, also, Lord King v. Chambers, 1 Starkie, 195, and 4 Camp. 377. An act of New York (1855), provides:— "Whenever any building or other real or personal property shall be destroyed or injured, in consequence of any mob or riot, the city or county in which such property was situated shall be liable to an action." A fire broke out at the time of the draft riots in New York, July, 1863. In an action under this act it is held, in Ross v. New York, 4 Rob. [N. Y.] 50, that circumstantial evidence is admissible to show that the fire might have been occasioned by a riot or mob. And evidence that a group of men were standing by the hose, and some of them expressed a desire to cut the hose, should be submitted to the jury as tending to connect the fire with a mob or riot actually existing, in connection with threats previously made by the rioters to burn these very premises. In Darlington v. New York, 31 N. Y. 164, and Davidson v. New York, 2 Rob. [N. Y.] 230, the above act was held constitutional. In Sarles v. New York, 47 Barb. 447, it is held the above act covers property carried off by the mob, as well as that destroyed. A riot is defined to be, by elementary writers, "an unlawful act of violence." Since the legislature has placed the execution of what was once a common-law right, belonging to any citizen, into the hands of a special tribunal, that tribunal alone can lawfully execute that power. The act, if performed by others, is an unlawful act of violence. For other leading cases upon the subject of riots, see State v. Renton,

15 N. H. 172; State v. Snow, 18 Me. 346; State v. Straw, 33 Me. 554; State v. Connolly, 3 Rich. Law, 338, 2 Chit. Cr. Law, 274; Brown v. Perkins, 1 Allen, 89; Miller v. Shaw, 4 Allen, 500; Com. v. Campbell, 7 Allen, 542; Tyson v. Booth, 100 Mass. 261; Lord Gordon's Case, 21 How. State Tr. 539; Com. v. Gibney, 2 Allen, 152; Scott v. U. S., 1 Morris (Iowa) 142; Williams v. State, 9 Mo. 270.

There is certainly evidence to go to the jury that Hall, the owner, made proper efforts to discover the perpetrators and to bring them to justice. See Report, pp. 78, 79, 85–88. It is quite probable that the evidence might have operated very differently upon the minds of the jury than upon that of the presiding judge. It will be observed that he remarks in his ruling that he doubts "whether there is any evidence that Hall ever undertook or made any inquiries to speak of until this case was brought." It was a question of fact, and should have been submitted to the jury upon the evidence.

J. P. Healy and H. W. Putnam, for defendant.

The defendant is not liable at common law for the destruction of the plaintiff's property, whether real or personal, in the manner alleged in any of the counts or disclosed by any of the evidence. A municipal corporation is not liable for the tortious acts of its agents or officers acting entirely outside of the scope of their corporate duties and employments, and without any special authority from the governing body. Dill. Mun. Corp. § 770, and cases cited; Thayer v. Boston, 19 Pick. 511, 516.

1. Neither the mayor and aldermen, nor any of the civil officers of the city, have any authority, either at common law or under the charter of the corporation, to destroy either buildings or personal property of the citizens, as the agents of the city.

2. The military officers of the place, whether those be United States army or state militia officers, are not the agents of the city, and cannot bind it by their acts. The former derive all their powers and duties from the acts of congress, which in no way connect them with the states or cities in or near which they happen to be quartered. The latter derive all their powers and duties from the state, and their powers and duties and the manner of their appointment and removal are all provided for by state statutes, which do not connect them in any way with the municipal corporations situated within the limits of the state. Gen. St. Mass. c. 13.

3. Firewards, engineers, firemen and policemen are not agents of the city in its corporate capacity, and do not derive their authority from the city. They are public officers forming a part of the governing power of the commonwealth, and vested by statute

with certain powers and duties which they exercise independently of the city. The defendant is not responsible for any of their tortious acts. Hafford v. New Bedford, 16 Gray, 297; Buttrick v. Lowell, 1 Allen, 172; Fisher v. Boston, 104 Mass. 87, 94; Wheeler v. Cincinnati, 19 Ohio St. 19; Dill Mun. Corp. §§ 758, 773. Moreover, no individual or municipal officer who demolishes houses in good faith to prevent the spread of a fire commits a tortious act in so doing; and therefore, his acts not being such as to render himself personally liable for a tort, they cannot subject his principal (assuming the city to be such) to any liability. 2 Dill. Mun. Corp. (2d Ed.) § 756, and cases cited. As all the testimony shows the acts of the above-named individuals and officers to have been done in good faith, there was no tort committed by them.

4. Municipal corporations are not liable in damages at common law for property of individuals destroyed by riotous, or tumultuous assemblies. Dill. Mun. Corp. § 760, and cases cited; Davidson v. New York, 2 Rob. (N. Y.) 230; Darlington v. Same, 31 N. Y. 164; Western College v. Cleveland, 12 Ohio St. 375; Prather v. Lexington, 13 B. Mon. 559; Ward v. Louisville, 16 B. Mon. 184.

There is no evidence to support a verdict for the plaintiff under the statutes of the commonwealth, the liability of the defendant in any event being purely the creature of statute. Under the first five counts of the declaration the plaintiff relies upon Gen. St. c. 24, §§ 4, 5, which are as follows:— "Sect. 4. The firewards, or any three of them present at a place in immediate danger from a fire, and where no firewards are appointed, the selectmen or mayor and aldermen present, or in their absence two or more of the civil officers present, or in their absence two or more of the chief military officers of the place present, may direct any house or building to be pulled down or demolished, when they judge the same to be necessary in order to prevent the spreading of the fire. Sect. 5. If such pulling down or demolishing of a house or building is the means of stopping the fire, or if the fire stops before it comes to the same, the owner shall be entitled to recover a reasonable compensation from the city or town; but when such building is that in which the fire first broke out, the owner shall receive no compensation." Acts 1850, c. 262, § 3 (under which act the fire department of the city of Boston, as it existed in November, 1872, was established by city ordinance), is as follows:—"Sect. 3. The engineers or other officers of the department, so appointed as aforesaid, shall have the same authority in regard to the prevention and extinguishment of fires, and the performance of the other offices and duties now incumbent upon firewards, as are now conferred upon firewards by the Revised Statutes or the special acts relating to the city of Boston now in force." Rev. St.

c. 18, §§ 4, 7, are substantially the same as Gen. St. c. 24, §§ 4, 5; and it appears by the commissioners' report that no change was intended, although the phraseology is slightly different. (Report of the Commissioners on the Revision of the Statutes, 1858, pp. 208, 209.) And there are no special acts relating to the city of Boston which touch this point. It is, therefore, immaterial whether the powers of the engineers are determined by Rev. St. c. 18, § 4, or Gen. St. c. 24, § 4. The city ordinance establishing the fire department as it existed in November, 1872 (Laws and Ordinances of City of Boston, Ed. 1869, p. 237), is as follows:— "Sect. 11. Whenever it is adjudged at any fire, by any three or more of the engineers present, of whom the chief engineer, if present, shall be one, to be necessary in order to prevent the further spreading of the fire, to pull down or otherwise demolish any building, the same may be done by their joint order."

The New York cases, arising after the fire of 1837, turned upon the wording of the New York statute, which gave a remedy against the city to "the owners of such building and all persons having any estate or interest therein for the damages they have sustained by the pulling down or destroying thereof." New York v. Lord, 17 Wend. 285; Id., 18 Wend. 126.[3]

The court rightly ruled (pages 9, 10) that the orders for the destruction of buildings must be given by three of the engineers, in order to render the city liable. The statute above cited (Acts 1850, c. 262, § 3) expressly confers upon the engineers the powers of firewards in respect to the demolition of buildings. Gen. St. c. 24, §§ 4, 5, confer certain judicial discretion, and the power to carry out that discretion, upon officers (firewards) vested by law with certain duties in relation to the extinguishment of fires; and the identity of the duties and functions, not of the names, determines who shall exercise the powers. Similar cases are common in the legislation of Massachusetts. Thus, engineers of fire departments established by selectmen of towns (Id. § 26), and in fire districts (Id. § 41), have all the powers of firewards; the board of aldermen of the city of Boston have the powers of highway surveyors (City Charter, § 41; Acts 1854, c. 488, § 41), and of county commissioners for Suffolk county (Gen. St. c. 17, § 33). Powers so given are upheld by the decisions of the supreme judicial court of Massachusetts. Benjamin v. Wheeler, 15 Gray, 486, 490; Heald v. Lang, 98 Mass. 581; Long v. Sargent, 101

---

[3] But see Bronson, J.'s, very able dissenting opinion, and the cases of Mayor. etc., of New York v. Stone, 20 Wend. 139, 25 Wend. 160; Russell v. New York, 2 Denio, 461,—approving of Bronson, J.'s, opinion, and holding that the city is not responsible for destruction of personal property owned by a person who is not himself an occupant.

Mass. 117; Fisher v. Boston, 104 Mass. 94. The statute on which the plaintiff relies (Gen. St. c. 24, § 4) has been construed by the supreme judicial court of Massachusetts to mean that three firewards must determine upon the particular building which they shall adjudge necessary to be destroyed. It is the united judgment of the officers to whom the power is given, acting upon the immediate exigency which is contemplated by the statute. It is not sufficient that a general conclusion or judgment be arrived at, that it is necessary to destroy some buildings in order to put a stop to the further extension of a fire. Coffin v. Nantucket, 5 Cush. 269; Ruggles v. Nantucket, 11 Cush. 433, 436, 437; Parsons v. Pettingill, 11 Allen, 507, 511; Dill. Mun. Corp. § 757, and cases cited.

III. Under the sixth count, the plaintiff relies upon Gen. St. p. 816, c. 164, § 8, which is as follows:—"Sect. 8. When property of the value of $50 or more is destroyed, or property is injured to that amount, by any persons to the number of twelve or more, riotously, routously, or tumultuously assembled, the city or town within which the property was situated shall be liable to indemnify the owner thereof, to the amount of three-fourths of the value of the property destroyed, or of the amount of such injury thereto, to be recovered in an action of tort: Provided, that the owner of such property uses all reasonable diligence to prevent its destruction or injury, and to procure the conviction of the offenders." This section is contained in a chapter prescribing penalties for criminal offences against the public peace. The preceding section (Id. § 7) makes it a state-prison offence (i. e. a felony) for "persons unlawfully assembled to demolish . . . any building" . . . And it is evidently intended that, for the same crime, cities and towns shall be liable in damages to property holders. There is no statutory definition of "riot," "rout," and "tumult," in Massachusetts, and the common-law definitions of those words must be followed. The terms "riotous," "routous," and "tumultuous," as applied to an assembly, are in law synonymous. Such an assembly as either of these adjectives would indicate becomes a "riot" when its members commit any overt acts of violence, such as the destruction of property. "Tumultuous" or "unlawful" assembly, and a "rout," are the preliminary steps to a "riot," and contain all the ingredients of the latter offence, except the actual execution of the criminal enterprise. Hawk. P. C. bk. 1, c. 65, §§ 3–5; Rosc. Cr. Ev. (8th Ed.) 902; 1 Russ. Crimes, 266, 272; 2 Whart. Cr. Law, § 2473 et seq.; Reg. v. Soley, 11 Mod. 116, 2 Salk. 594. The gist of the present case is the overt act, i. e. criminal destruction of property, for which the city is held liable to give indemnity, and the plaintiff must, therefore, prove a "riot." He must show that twelve or more persons took such part in the destruction of his property as to render them each and all guilty of the crime of "riot."

The common-law definition of a "riot" is as follows:—"A tumultuous disturbance of the peace by three persons or more assembling together of their own authority, with an intent mutually to assist one another against any who shall oppose them in the execution of some enterprise of a private nature, and afterwards actually executing the same in a violent and turbulent manner, to the terror of the people, whether the act intended were of itself lawful or unlawful." Hawk. P. C. bk. 1, c. 65, § 1; Rosc. Cr. Ev. (8th Ed.) 901; 1 Russ. Crimes, 266; 2 Whart. Cr. Law, § 2473 et seq.; 2 Bish. Cr. Law, § 1183 et seq. In the case at bar the number of persons must be twelve instead of three, that number being fixed by the statute above cited. (The constitutionality of a similar act has been passed upon in New York, and sustained, though with a strong dissenting opinion by Ingraham, J. Davidson v. New York, 2 Rob. [N. Y.] 230; Darlington v. Same, 31 N. Y. 164.) To constitute a riot, then, several things must be proved:—1. An "unlawful assembly" of twelve or more persons, i. e. a meeting under circumstances which the law does not allow, and with a common criminal intent. Rosc. Cr. Ev. (8th Ed.) 906; Hawk. P. C. bk. 1, c. 65, §§ 3–5; Rosc. Cr. Ev. (8th Ed.) 902; Dougherty v. People, 4 Scam. 180; Reg. v. Soley, 11 Mod. 116, 2 Salk. 594. 2. A confederation of twelve or more, with promises of mutual assistance in carrying out the common purpose with violence if necessary. 3. Tumult and disturbance of the peace by twelve or more in forming and moving towards a performance of the common purpose. 4. The actual commission of the act by twelve or more, with circumstances inspiring terror. 5. Some private quarrel or malice actuating the twelve or more persons claimed to be rioters. In this case none of these propositions are proved. There is no evidence whatever of any unlawful assembly with a common purpose, either when they first assembled or afterwards, to destroy this building. Com. v. Gibney, 2 Allen, 150; State v. Stalcup, 1 Ired. 30; State v. Kempf, 26 Mo. 429; Newby v. Territory, 1 Or. 163; Prince v. State, 30 Ga. 27. There were crowds in the streets, as there always are at fires, watching, as spectators, the fire that was raging. They did not have any other common purpose either in assembling or after they assembled. Only three or four persons are shown to have had any common purpose to demolish this building. Others were outside, looking on; but there is no evidence that they knew of the intended demolition at all, or, if they did know of it, that they had any other thought than to see the explosion, which they supposed was being executed under lawful authority and for the purpose of stopping the spread of the fire. There is no evidence of a criminal intent or

desire to wantonly destroy property. Acts done bona fide with the intent to save property by destroying buildings with gunpowder, which would in any event be inevitably destroyed by fire, are legal and justifiable, and are not evidence of a criminal intent. Mouse's Case, 12 Coke, 63; 2 Dill. Mun. Corp. § 756, and cases cited; Patterson, J., in Reg. v. Langford, 1 Car. & M. 602; Maleverer v. Spinke, 1 Dyer, 35a; Governor v. Meredith, 4 Term R. 794. No other motive than the above-mentioned one is shown in any persons having any thing whatever to do with the blowing up of this building. Persons standing around looking on do not become aiders and abettors, or confederates, from the mere fact of not resisting the acts of others. Com. v. Griffin, 3 Cush. 523; Com. v. Berry, 5 Gray, 93; Brown v. Perkins, 1 Allen, 89, 98; Pennsylvania v. Craig, Add. 190; State v. McBride, 19 Mo. 239; State v. Calder, 2 McCord, 463; Fauvia v. New Orleans, 20 La. Ann. 410. There is no evidence whatever that the building was blown up in a violent manner, and under circumstances of terror to the owners or occupants. Actual force must be proved. Rex v. Bathurst, Sayer, 225; King v. Wilson, 8 Term R. 357. Also circumstances calculated to excite terror, in order to prove the necessary allegation in an indictment that the act was done in terrorem populi. Rex v. Hughes, 4 Car. & P. 373; Rex v. Cox, Id. 538; Com. v. Runnells, 10 Mass. 518; 1 Bish. Cr. Law, § 979, and cases cited. More than a mere civil trespass must be proved. The court will not submit a case to the jury upon the appearance of a mere scintilla of evidence in support of plaintiff's case. There must be a kind and amount of evidence which would reasonably warrant a verdict for plaintiff. Clifford, J., in Merchants' Bank v. State Bank, 10 Wall. [77 U. S.] 664, 665; Ryder v. Wombwell, L. R. 4 Exch. 39; Giblin v. McMullen, L. R. 2 P. C. 335; Jewell v. Parr, 13 C. B. 916; King v. Accumulative L., F. & G. Assur. Co., 3 C. B. (N. S.) 151; Wheelton v. Hardisty, 8 El. & Bl. 262, 266.

CLIFFORD, Circuit Justice. Since the case was entered here, the same has been fully argued, the error assigned being that the district court erred in directing a verdict for the defendant. Instead of that, the proposition is, that, inasmuch as the evidence was in its nature legally admissible, its sufficiency to prove the issue was for the jury, and it was error in the presiding justice to withdraw it from their consideration. Authorities undoubtedly may be found, in which it is held that it is necessary in all cases to leave the question to the jury, if there is any evidence, even a scintilla, in support of the issue; but it is now well-settled law that the question for the judge in such a case is not whether there is literally no evidence to support the issue, but whether there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established. Ryder v. Wombwell, L. R. 4 Exch. 39. Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant a jury in finding a verdict in favor of that party. Giblin v. McMullen, L. R. 2 P. C. 335.

Most of the modern decisions are in accord with the views expressed in that case, and they show the rule to be that there is, or may be, in every case, before the question is left to the jury, a preliminary question for the judge, not whether there is literally no evidence to support the issue, but whether there is any upon which the jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. Jewell v. Parr, 13 C. B. 916; Toomey v. London, B. & S. C. Ry. Co., 3 C. B. (N. S.) 150; Wheelton v. Hardisty, 8 El. & Bl. 266; Schuchardt v. Allens, 1 Wall. [68 U. S.] 369; Merchants' Bank v. State Bank, 10 Wall. [77 U. S.] 637; Schuylkill & D. Imp. & R. Co. v. Munson, 14 Wall. [81 U. S.] 448; Pleasants v. Fant, 22 Wall. [89 U. S.] 120. Under that rule it is clear that the ruling of the district court was correct, unless the views of the plaintiff can be sustained in regard to the causes of action set forth in the fifth and sixth counts of the declaration. Prima facie, a municipal corporation is liable for the trespass or wrongful acts of their officers; but it may become liable under special circumstances, as where the act, if not wholly ultra vires, was expressly authorized by the governing body of the corporation, or where, without special authority, it was done by its officers in the scope of their duties or employment, and has been ratified by the corporation. Municipal corporations, or certain officers thereof, are sometimes appointed, by charter or statute, agents to judge of an emergency and to perform or direct the performance of acts which a private individual would do at his peril. Acts authorized to be done to prevent the spreading of fire may be put as an example of the kind. Officers of such corporations are accordingly sometimes authorized to pull down or destroy buildings to stay the progress of fire, and such corporations are in certain cases and under certain conditions made liable by statute for the value of the property injured or destroyed for the purpose; but the liability of the municipal corporation in such a case is purely statutory, and never existed at common law. Hence, in order to recover for such a claim, the case must be clearly proved, and be fairly brought within the statutory provision. Consequently it is decided that, where the statute allows such a recovery only when a building is demolished by the order of three firewards, a destruction of it by the order of one of those officers will

create no liability against the corporation. Engineers in this state have the same authority in regard to the prevention and extinguishment of fires, and the performance of other offices and duties in respect thereto, as firewards, and the same rule applies in determining whether or not the corporation is liable for their acts. Gen. Acts, 1850, c. 262, § 3; Gen. St. p. 181, c. 24, § 41.

Claims of the kind, whether the property was injured or destroyed by the act of the firewards or engineers, must be brought strictly within the statute creating the liability, or the corporation will not be held responsible. Statutes of the kind cannot be modified by a by-law, as, for example, where the statute allowed such an order to be given by three firewards, and the by-law authorized one to exercise it in urgent cases, the supreme court of Massachusetts held that the by-law was void; that the injured party could not recover. Coffin v. Nantucket, 5 Cush. 271. In order to charge the corporation in such a case, the remedy being given only by statute, the case must be brought clearly within the true intent and meaning of the provision creating the liability. Taylor v. Plymouth, 8 Metc. [Mass.] 465; Hafford v. New Bedford, 16 Gray, 302.

Houses or buildings situate at a place in immediate danger from a fire may, by the order of three firewards, be pulled down or demolished, when they judge the same to be necessary in order to prevent the spreading of the fire. Property within such a house or building, it may be admitted, is within the scope and meaning of the provision, and the succeeding section provides that the owner shall be entitled to recover a reasonable compensation from the city or town, if such pulling down or demolishing of the house or building was the means of stopping the fire, or if the fire stopped before it came to the same, unless the house or building pulled down or demolished was the one in which the fire first broke out, in which event the provision is that the owner shall receive no compensation. Gen. St. p. 176, c. 24, § 5. Cities and towns are liable to that extent, and under those conditions, and not otherwise. Unless, therefore, the evidence offered by the plaintiff at the trial brings his case within those provisions, he cannot recover in this action. Such an action cannot be maintained unless it appears that the house or building was pulled down or demolished by the order of three firewards or three engineers, or by the joint order of some one of the other classes of officers named in section 4 of that act.

Much discussion of that question is unnecessary, as it has already been decided by the supreme court of the state. "The plain intent of the statute is that no house or building shall be demolished unless it shall be judged necessary by three firewards, or by the other officers authorized to act in their absence, or where no firewards have been appointed." Ruggles v. Nantucket, 11 Cush. 436. Nothing is left for construction, since that decision, in disposing of the cause of action set forth in the first four counts in this case, as the court there say, "It is the united judgment of the officers to whom the power is given, acting upon the immediate exigency, and determining the necessity which is contemplated by the statute. Its language is capable of no other reasonable interpretation. It is a joint authority expressly given to the officers designated, acting together, and cannot be exercised by a minority or by any one of them," and the court add, what it is important to observe, that it is not sufficient that a general conclusion or judgment was arrived at by three firewards, or the other officers mentioned, that it was necessary to destroy some buildings in order to put a stop to the further extension of a fire. They must go further. They must determine upon the particular house or building which they shall adjudge necessary to be destroyed for the purpose, as this cannot be left to the individual judgment of any one of the firewards. Federal courts, in construing state statutes, follow the decisions of the state, and in general regard the construction given to the statute by the state court as binding as the text. Leffingwell v. Warren, 2 Black [67 U. S.] 603; Loring v. Marsh [Case No. 8,514]; McKeen v. Delancy, 5 Cranch [9 U. S.] 22.

From these rules, it is very clear that the plaintiff failed to prove any right to recover under the first four counts of the writ. Evidence was given upon the subject, as, for example, the chief engineer, Damrell, testified that at a meeting of three or four engineers with him, it was voted, if, in the judgment of the chief engineer, gunpowder could be used in any way to stay the conflagration, the board were ready to co-operate, but he states that it was contrary to their judgment that gunpowder was used. Two engineers, Green and Smith, were designated to act with the chief engineer, but he testifies that he and his associates did not designate any building to be destroyed, and that they had not decided at that time to blow up any building. Persons subsequently met in consultation at the mayor's office, but three engineers were not present. Damrell was there, and perhaps Green, but no others of that class of officers. According to the testimony of William L. Burt, he, said Burt, was assigned to the district where this building was situated, by the mayor and chief engineer, with authority to use gunpowder at his discretion, and it appears that Burt blew up the building with the concurrence of Green, but no other engineer ever assented to the act. All that is proved is that one engineer gave the order, which is clearly insufficient to support the action, the rule being that "three engineers must determine upon the particular house or building which

they shall adjudge necessary to be destroyed for the purpose." In the case at bar, the evidence fails to show any joint judgment of three firewards or engineers as to the necessity of destroying the building which contained the property, the value of which the plaintiff seeks to recover in this action.

Private property, under the constitution of the state, cannot be taken from the owner, or be applied to public uses, without his own consent, or that of the representative body of the people, and the provision is, that, whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor. Gen. St. p. 17. Viewed in any light, the evidence had no tendency to show that the property destroyed was taken by the corporation for any use, public or private. Enough appears to show that the property was destroyed, but there is no evidence whatever that the order for its destruction was given by any one who had any authority to represent the corporation in that regard, which is all that need be said upon the subject.

Nor can the action be sustained under the sixth count, for the reason that the evidence introduced has no tendency whatever to show that the persons who destroyed it were engaged in a riot. Instead of that, the tendency of the evidence is to show that the order for the destruction of the building was given by William L. Burt, with the concurrence of one engineer, and it is not charged, even in argument, that they were engaged in any riotous proceedings. Suffice it to say that the charge of riot is wholly unsupported by the evidence, and that there is no evidence in the case, to support the sixth count of the writ, which deserves any consideration. Judgment of the district court affirmed, with costs.

[NOTE. This case was affirmed by the supreme court on the ground that the rule is settled in the United States courts that in a civil case, whenever the evidence, clearly, does not warrant a verdict for a party, and that if there were such a verdict the opposing party would be entitled to a new trial, the court should direct the jury to find according to its (the court's) views; also, that, the remedy being given by statute, the case must be brought clearly within it; and, further, that there was no proof of compliance with the statute, by an adjudication of three of the engineers present as to the necessity for the destruction of the building, nor proof that such destruction was by their joint order. In the language of Mr. Justice Swayne: "At least three engineers of the fire department—the chief engineer, if present, being one—must have consulted together touching the blowing up of that particular building. They must all have arrived at the conclusion that it was necessary to destroy it in order to arrest the progress of the flames. They must all, jointly and specifically, have ordered that building to be destroyed. * * * We have failed to find the slightest proof that any three of the fire engineers ever consulted in relation to destroying the building to which this controversy relates; that any three, jointly or severally, expressly or by implication, gave an order that it should

be destroyed; or that this particular building was ever present to the minds of any three of the engineers, in that connection." Bowditch v. Boston, 101 U. S. 16.]